Vivian **ALBRIGHT**, Individually and as Next Friend of **T.A.**, and **George Cantu**, Appellants,

v.

**TEXAS DEPARTMENT OF HUMAN SERVICES**, Aida **Villareal**, Valerie **Johnson**, and Debra **Emerson**, Appellees.

No. 01–92–00729–CV.

Court of Appeals of Texas, Houston (1st Dist.).

July 29, 1993.

John W. Donovan, Houston, for appellants.

Ann Hartley, Dan Morales, Will Pryor, Mary Keller, Delmar L. Cain, Austin, for appellees.

Before HEDGES, DUGGAN and O'CONNOR, JJ.

## OPINION

HEDGES, Justice.

In this action against the Texas Department of Human Services (TDHS) and three of its employees, plaintiffs Vivian Albright, individually and as next friend of T.A., and George Cantu alleged negligence and wrongful conduct in the removal of a child from her home on suspicion of sexual abuse. We must decide (1) whether summary judgment affidavits were sufficient to establish the good faith requisite of official immunity claimed by individual defendants Aida Villareal, Valerie N. Johnson, and Debra Emerson; and (2) whether the trial court properly granted TDHS's motion to dismiss based on plaintiffs' failure to comply with the court's special exceptions order. We affirm as to defendants Villareal, Johnson, and Emerson and reverse and remand as to TDHS.

On July 15, 1988, Vivian Albright called TDHS to report that her six-year-old daughter, T.A., was suffering from gonorrhea, according to a doctor who had examined her. Caseworker Villareal went to Albright's home the next day to interview T.A., but no one was there. When Villareal returned the following day and attempted to interview the child, Albright interrupted the interview. Villareal persuaded Albright to bring T.A. to the TDHS office, where she continued the interview.

Albright had taken T.A. to the Humana Hospital Southmore Laboratory for a second gonorrhea test on July 15, 1988. She told Villareal that the original diagnosis of gonorrhea, made by Dr. Eoin Harvey, was incorrect. She later admitted knowing that the results of the second gonorrhea test were not available at the time she made that statement. Based on her interview of the child, Villareal concluded that T.A. might have been sexually abused by Albright's boyfriend, George Cantu. Albright denied that Cantu had sexually abused T.A.

Villareal determined that T.A. was in danger of being sexually abused and should be immediately removed from her mother's home. After a hearing at which TDHS was granted temporary possession of T.A., the agency placed T.A. in foster care on July 16, 1988. Johnson was assigned as T.A.'s caseworker under Emerson's supervision. Later in July 1988, T.A. was placed in the possession of her maternal grandmother. In November 1988, Johnson was advised that because T.A. was denying abuse, Albright's and T.A.'s therapist was not sure that the child had ever even suffered sexual abuse. TDHS nonsuited its custody case in December, and

T.A. was returned to Vivian in early December 1988.

In 1990, plaintiffs filed suit against TDHS under the Texas Tort Claims Act and against employees Villareal, Johnson, and Emerson. The trial court granted the individual defendants an interlocutory summary judgment on the basis of official immunity. Subsequently, the court granted TDHS's motion to dismiss based on the failure of the plaintiffs to comply with special exceptions.

Plaintiffs sought damages based on defendants' alleged wrongful and negligent conduct. Specifically, they contended that TDHS, through its representatives, wrongfully took possession of T.A. and kept her for five months, without just cause and without the consent of T.A. or her mother. Further, they alleged that the individual defendants wrongfully and maliciously accused Albright of being an unfit mother and Cantu of molesting the child, and that defendants' negligent acts, including the misuse of files, records, notes, reports, recordings, and other documentation proximately caused the plaintiffs' injury. Additionally, the individual defendants "acted in bad faith, [and] in a reckless and careless disregard for the rights and well being of the plaintiffs...."

In point of error one, plaintiffs assert that genuine issues of material fact precluded the trial court's granting summary judgment in favor of the individual defendants as a matter of law. In their motion, the individual defendants raised the affirmative defenses of both statutory and common-law official immunity and asserted that "when a DHS employee, acting in good faith and within the scope of her employment, takes actions to protect a child reasonably believed to be in danger, that employee is immune from liability for those actions." Plaintiffs responded that their controverting evidence raised fact issues concerning (1) whether the individual defendants' actions were taken in good faith, and (2) whether they were acting outside the scope of their employment. They further asserted that the allegations in their second amended petition and deposition testimony raised the issue of the maliciousness and personal liability of the individual defendants.

The supreme court has mandated the following standards for reviewing a motion for summary judgment:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

3. Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 549 (Tex.1985); *Montgomery v. Kennedy,* 669 S.W.2d 309, 310–11 (Tex.1984); *see also Clark v. Pruett,* 820 S.W.2d 903, 905–906 (Tex.App.—Houston [1st Dist.] 1991, no writ).

A properly pleaded affirmative defense, supported by uncontroverted summary judgment evidence, may serve as the basis for a summary judgment. *Roark v. Stallworth Oil & Gas, Inc.,* 813 S.W.2d 492, 494 (Tex.1991). If a defendant moves for summary judgment based on an affirmative defense, the defendant's burden is to conclusively prove all the elements of the affirmative defense as a matter of law. *Montgomery,* 669 S.W.2d at 310–11; *Rose v. Baker & Botts,* 816 S.W.2d 805, 809 (Tex.App.—Houston [1st Dist.] 1991, writ denied). "The non-movant must expressly present to the trial court any reasons seeking to *avoid* movant's entitlement ... and he must present summary judgment proof when necessary to establish a fact issue." *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979).

The individual defendants based their motion for summary judgment in part on the affirmative defense of statutory immunity. They asserted that Villareal is immune from liability under section 17.08 of the Texas Family Code, which provides:

A person who takes possession of a child under Section 17.03 of this code is im-

mune from civil liability if, at the time possession is taken, he had reasonable cause to believe there was an immediate danger to the physical health or safety of the child.

TEX.FAM.CODE ANN. § 17.08 (Vernon 1986). They further urged that they are all immune from liability under Texas Family Code § 34.03, whereby a person reporting or assisting in the investigation of a report of child abuse is immune from liability unless that person acted in bad faith or with malice. TEX.FAM.CODE ANN. § 34.03 (Vernon Supp.1993).

■ The individual defendants also raised the affirmative defense of official immunity. A well-founded public policy underlies this common-law concept. If public employees were held liable for negligent conduct in the course and scope of their official duties, "the prudent would be reluctant to enter governmental service and even competent persons who entered public life would not be zealous in discharging their duties." *Baker v. Story*, 621 S.W.2d 639, 643–44 (Tex.App.—San Antonio 1981, writ ref'd n.r.e.). Immunity is particularly important in the area of investigation of child abuse, "where the investigator is required to make a decision that, in all likelihood, is going to be viewed by someone as improvident, no matter what the decision is." *Austin*, 711 S.W.2d at 68.[1]

■ Under the doctrine of official immunity, state employees whose job status is classified as "quasi-judicial" are immune from personal tort liability for erroneous or negligent conduct as long as they act in good faith and within the scope of their employment. *Eakle v. Texas Dep't of Human Serv.*, 815 S.W.2d 869, 875 (Tex. App.—Austin 1991, no writ); *Russell v. Texas Dep't of Human Resources*, 746 S.W.2d 510, 513 (Tex.App.—Texarkana 1988, writ denied); *Austin v. Hale*, 711 S.W.2d 64, 68 (Tex.App.—Waco 1986, no writ). Quasi-judicial status attaches to state employment that involves discretionary, rather than ministerial, acts. *Eakle*, 815 S.W.2d at 875; *Austin*, 711 S.W.2d at 67. Discretionary acts require deliberation, decision and judgment, whereas ministerial acts involve "obedience to orders, or the performance of a duty as to which the actor is left no choice." *Baker*, 621 S.W.2d at 645. Investigating and acting on gathered facts has been designated quasi-judicial action. *Eakle*, 815 S.W.2d at 875.

■ Individual defendants, Villareal, Johnson, and Emerson, all investigated the Albright case and all made decisions based on the facts they gathered. The actions of all three required deliberation, decision-making, and the exercise of judgment. We find that all three defendants held quasi-judicial positions. Moreover, because there is no evidence in the record that defendants acted outside the scope of their employment, we reject plaintiffs' challenge to the contrary.

---

1. The significance of the doctrine of official immunity has been recognized by the Texas Legislature as well as by respected jurists. In affording governmental employees the rare privilege of appealing an interlocutory order denying a summary judgment based on governmental immunity under TEX.CIV.PRAC. & REM.CODE ANN. § 51.014(5) (Vernon Supp.1993), the legislature demonstrated the importance it attaches to this defense. Clearly, the legislature contemplated that summary judgment is the appropriate procedure in which to determine official immunity. And in his concurrence in *Travis v. City of Mesquite*, 830 S.W.2d 94 (Tex.1992), Justice Cornyn observed:

When successfully invoked, such procedure renders an officer's immunity an *immunity from suit*, not just immunity from liability. The very reasons for the grant of immunity are effectively unsalvageable if the official is determined to be immune from liability only after a trial on the merits. The articulated basis for such immunity is: the importance of avoiding distraction of officials from their governmental duties; the desire to avoid inhibition of discretionary action; minimizing deterrence of able people from public service; avoiding the costs of an unnecessary trial; and insulating officials from burdensome discovery.

830 S.W.2d at 102 n. 2 (citations omitted); *accord Nieto v. San Perlita Indep. School Dist.*, 894 F.2d 174, 177 (5th Cir.1990) (because the defense of qualified immunity is immunity from suit, which extends beyond just a defense to include all aspects of civil litigation, qualified immunity questions should be resolved at the earliest possible stage of litigation).

The critical factor of good faith determines the availability of all three immunities claimed by the individual defendants. Good faith in the context of official immunity is an elusive concept. We have determined that a balancing test, modeled after standards adopted by the United States Supreme Court in 42 U.S.C. § 1983 cases, is the appropriate method of analyzing the standard of conduct demanded of official immunity claimants. In the application of this test, competing interests of the respective parties and the public are weighed.[2] To determine whether defendants in this case acted in good faith, we will balance the interests of the parties: the victim, the mother, the suspected abuser, and the public.

The Texas Family Code makes it clear that in instances of suspected child abuse, the protection of the child is paramount. Any person who has reason to believe that a child is being abused *shall* report the abuse to TDHS. TEX.FAM.CODE ANN. § 34.01 (Vernon Supp.1993). Those who report instances of abuse in good faith are accorded special statutory immunity. TEX.FAM.CODE ANN. § 34.03 (Vernon Supp. 1993). An authorized representative of TDHS may remove a child from a home without a court order "upon personal knowledge of facts which would lead a person of ordinary prudence and caution to believe that there is an immediate danger to the physical health or safety of the child and that there is no time to obtain a temporary restraining order or attachment...." TEX.FAM.CODE ANN. § 17.03(a)(3) (Vernon 1986). "A person who takes possession of a child under Section 17.03 of this code is immune from civil liability if, at the time possession is taken, he had reasonable cause to believe there was an immediate danger to the physical health or safety of the child." TEX.FAM.CODE ANN. § 17.08 (Vernon 1986).

These provisions of the Family Code illustrate the high priority that the State of Texas places on the prevention of child abuse. TDHS's vast power to take possession of a child and the mandatory reporting requirements when abuse is suspected demonstrate the public commitment to the promotion of the welfare of children. However, the interests of the parent are also protected. Section 17.03 provides that if a child is taken from a home without a court order, a hearing must be held no later than the first working day after the child is taken into possession. If the hearing is not held in a timely manner, or if the court is not satisfied that there is a continuing danger to the child, the child shall be returned to the parent. TEX.FAM.CODE ANN. § 17.03(c), (d) (Vernon 1986). Anyone who reports or assists in the investigation of child abuse in bad faith is afforded no immunity from civil liability. TEX.FAM. CODE ANN. § 34.03(b) (Vernon Supp.1993). Additionally, it is a Class B misdemeanor to knowingly or intentionally make a report of child abuse that lacks factual foundation. TEX.FAM.CODE ANN. § 34.031(a) (Vernon Supp.1993).

In balancing the interests of T.A., Albright, Cantu, and the public, we find that the individual defendants acted in good faith. Their summary judgment evidence consists of their affidavits and attached case notes relating to the Albright investigation. In their affidavits, each individual defendant averred that she acted in good faith and without malice.

Villareal removed the child from the home based on the initial positive test for gonorrhea, on the child's indication that Cantu may have abused her, and on Albright's denial of the diagnosis and possibility of sexual abuse. Clearly, Villareal's conduct falls within the "reasonable cause" standard of Section 17.08 of the Family Code. Her actions further meet the standard of good faith required in official immunity and section 34.03 of the Family Code. Albright's and Cantu's subjective criticism of Villareal does not amount to evidence sufficient to impugn the good

---

**2.** In his concurring opinion in *Travis v. City of Mesquite*, 830 S.W.2d 94, 103 (Tex.1992), Justice Cornyn analyzes good faith in the context of policemen involved in a high speed chase. He balanced the safety of the general public against the need to apprehend the criminal suspect.

faith assertion and proof in Villareal's affidavit.

Johnson's summary judgment proof of good faith is conclusive. It is uncontroverted by plaintiffs' weak and concessionary testimony that although she tried to obtain a confession from Cantu, Johnson was generally helpful. Emerson's affidavit also establishes that she acted in good faith. Plaintiffs' vague allegations of negligence are insufficient to establish bad faith.

Plaintiffs predicated their bad faith allegation on the assertion that summary judgment evidence proves that T.A. did not have gonorrhea and had not been sexually abused. They contend that although the individual defendants were aware of these facts, they nonetheless maliciously and in bad faith removed and kept T.A. from her mother's home. The evidence does not support their contention.

■ Their controverting summary judgment evidence consists of two medical records and excerpts from the deposition testimony of Dr. Eoin Harvey, Vivian Albright, and George Cantu. We agree with the individual defendants' assertion that the medical records attached to plaintiffs' response to defendants' motion for summary judgment are not competent summary judgment evidence. The records consist of a copy of a lab report from Humana Hospital Southmore Laboratory dated July 15, 1988, and a copy of a medical report, dated July 21, 1988, prepared by Dr. Juliet Bixby. These documents are not attached to an affidavit in support of summary judgment and are neither sworn nor certified. Therefore, they are not competent summary judgment evidence. *Coleman v. Lumbermens Mut. Casualty Co.*, 786 S.W.2d 445, 447 (Tex.App.—Houston [1st Dist.] 1990, writ denied); *Lopez v. Hink*, 757 S.W.2d 449, 450 (Tex.App.—Houston [1st Dist.] 1988, no writ). Thus, the only competent summary judgment evidence provided by the plaintiffs is the deposition testimony of Dr. Harvey, of Vivian Albright, and of George Cantu.

In the excerpt from Dr. Harvey's deposition testimony, the following exchange took place:

Q. [D]id you from the physical examination make a determination as to whether or not [T.A.] had been sexually abused?
A. No, I didn't. I specifically told her mother that I could not tell that from examining her.

■ Contrary to plaintiffs' contentions, this excerpt does not establish the absence of sexual abuse. It establishes only that Dr. Harvey could not determine whether sexual abuse had occurred. This testimony, though competent, is not probative. *See Wheeler v. Aldama–Luebbert*, 707 S.W.2d 213, 215 (Tex.App.—Houston [1st Dist.] 1986, no writ). We find that this excerpt does not raise a fact issue concerning whether the individual defendants acted with malice or in bad faith. Moreover, there is nothing in the deposition testimony of Albright or Cantu that "conclusively" or "irrefutably" establishes the absence of gonorrhea and sexual abuse. Albright's testimony includes unsupported assertions that Dr. Harvey's diagnosis was incorrect and that T.A. was not molested. Cantu denies that he molested T.A. Plaintiffs argue, in effect, that a Child Protective Services caseworker should return a child to a home in which sexual abuse might have occurred on the sole assurance of the suspected abuser and the mother/girlfriend that the abuse never took place. They urge that any action to the contrary constitutes bad faith.

We find that the individual defendants' summary judgment evidence established that defendants Villareal, Johnson, and Emerson occupied quasi-judicial positions, that they acted within the scope of their employment, and that they acted in good faith during their involvement with the Albright case. We further find that plaintiffs did not raise a fact issue regarding any of these elements of official immunity. *Cf. Williams v. Conroe Indep. Sch. Dist.*, 809 S.W.2d 954, 959 (Tex.App.—Beaumont 1991, no writ) (in suit against school district and school district officials for intentional racial discrimination and deprivation of civil

rights, summary judgment evidence of discharged employee failed to controvert the facts established by officials' affidavits that they acted in good faith). We hold that the individual defendants are protected by the doctrine of official immunity and by section 34.03 of the Family Code and that Villareal is additionally immune from liability under section 17.08 of the Family Code. We overrule point of error one and affirm the summary judgment as to the individual defendants.

In point of error two, plaintiffs assert that the trial court erroneously granted TDHS's motion for dismissal based on their alleged failure to comply with the special exceptions. They urge that dismissal is precluded because they amended their pleadings sufficiently to comply with the court's order. Alternatively, if the trial court found that the amendments fell short, they should have been given an opportunity to amend.

On July 13, 1990, plaintiffs filed their original petition. Defendants answered on August 13, 1990, and initiated discovery. On July 25, 1991, defendants objected to plaintiffs' responses to certain interrogatories. When plaintiffs did not re-answer the interrogatories, defendants filed special exceptions to plaintiffs' original petition on August 8, 1991. At a hearing held August 16, 1991, the trial court granted all of defendants' special exceptions. On August 22, 1991, plaintiffs filed their first amended petition and the next day filed their second amended petition.

On March 5, 1992, TDHS filed a motion to dismiss, alleging that plaintiffs had failed to comply with the special exceptions granted by the court. Plaintiffs filed their response to this motion on March 11, 1991. Defendants filed an amended motion to dismiss on March 12, 1991. In this motion, defendants allege that plaintiffs failed to comply with six of the seven special exceptions. The trial court heard defendants' motion on March 13, 1991, and dismissed plaintiffs' lawsuit on May 27, 1992.

Clothed with broad discretion in granting special exceptions, a trial court's ruling may be reversed only upon a show-

ing of abuse of that discretion. *McAlister v. Medina Elec. Coop., Inc.,* 830 S.W.2d 659, 661 (Tex.App.—San Antonio 1992, writ denied); *H.O. Dyer, Inc. v. Steele,* 489 S.W.2d 686, 689 (Tex.Civ.App.—Houston [1st Dist.] 1973, no writ). A special exception is the appropriate means by which to urge that the plaintiff has not pled a cause of action. *Moseley v. Hernandez,* 797 S.W.2d 240, 242 (Tex.App.—Corpus Christi 1990, no writ). When special exceptions are sustained by the trial court, the pleader must be given, as a matter of right, an opportunity to amend the pleading. *Centennial Ins. Co. v. Commercial Union Ins. Co.,* 803 S.W.2d 479, 481 (Tex.App.—Houston [14th Dist.] 1991, no writ); *Moseley,* 797 S.W.2d at 242. When special exceptions are sustained, the pleader may amend the petition or refuse to amend and thereby test the validity of the ruling on appeal. *Moseley,* 797 S.W.2d at 242; *Geochem Lab., Inc. v. Brown & Ruth Lab., Inc.,* 689 S.W.2d 288, 289–90 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.). A trial court may not dismiss a suit until a party has been given an option to amend, unless it is clear that an amendment will not cure the defect. *Geochem,* 689 S.W.2d at 290; *see also Texas Dep't of Corrections v. Herring,* 513 S.W.2d 6, 8 (Tex. 1974) (only after a party has been given an opportunity to amend after special exceptions have been sustained may the case be dismissed for failure to state a cause of action); *McAlister,* 830 S.W.2d at 662. When there is no action by the trial court sustaining special exceptions to which a party is entitled, an order granting a dismissal for failure to state a cause of action must be reversed. *Centennial Ins. Co.,* 803 S.W.2d at 483; *Moseley,* 797 S.W.2d at 242.

After the trial court sustained defendants' special exceptions, plaintiffs filed two amended pleadings. Defendants filed an amended motion to dismiss in which they specifically called to the court's attention the additions and changes to plaintiffs' pleadings. The defendants did not, however, file special exceptions to plaintiffs' second amended pleading and the trial court

did not give plaintiffs the opportunity to either amend their revised pleadings or refuse to amend and stand on their second amended petition. The plaintiffs were entitled to such an opportunity. Because the trial court did not provide plaintiffs with this option, it abused its discretion. The trial court therefore erred in dismissing plaintiffs' lawsuit. *See Centennial Ins. Co.,* 803 S.W.2d at 484; *Geochem,* 689 S.W.2d at 290. Plaintiffs' point of error two is sustained.

We affirm the summary judgment in favor of Villareal, Johnson, and Emerson, and sever these defendants from the cause. We reverse the dismissal of the plaintiffs' suit against the Texas Department of Human Services and remand the cause to the trial court.