The STATE of Texas, The General Land Office of the State of Texas, Garry Mauro, Individually and as Commissioner of the General Land Office of the State of Texas, and Jack Giberson, Individually and as Chief Clerk of the General Land Office of the State of Texas, Relators,

v.

The Honorable M. Kent SIMS, Presiding Judge, 31st Judicial District Court, Roberts County, Texas, Respondent.

No. 07–93–0443–CV.

Court of Appeals of Texas, Amarillo.

Feb. 1, 1994.

Dan Morales, Atty. Gen., Austin, Rande K. Herrell and James W. Johnston, Asst. Attys. Gen., for relators.

Sheets & Holcomb, Amarillo, Jody Sheets, Locke, Purnell, Rain & Harrell, Michael V. Powell, Dallas, for respondent.

Before REYNOLDS, C.J., and DODSON and BOYD, JJ.

BOYD, Justice.

Relators, the Texas General Land Office (Land Office), Garry Mauro (Mauro), Commissioner of the Land Office, and Jack Giberson (Giberson), Chief Clerk of the Land Office, in their individual and official capacities, bring this original action seeking a writ of

mandamus concerning a discovery order signed by respondent, the Honorable M. Kent Sims, presiding judge of the 31st District Court, Roberts County. The issue before this court is the degree of protection from pretrial discovery afforded a government official raising the defense of official immunity. For the reasons hereinafter stated, we deny the writ requested by relators.

The suit which gives rise to this mandamus action began as a boundary dispute between the State of Texas, as the owner of Texas riverbeds, and landowners of adjacent riparian lands on the Canadian River. In 1965, the flood gates of the Sanford Dam, located on the Canadian River upstream of the disputed property, were closed. No water has been released from the Sanford Dam since the gates were closed 29 years ago. There has, however, been significant oil and gas production from the disputed property. It is this oil and gas production which makes determination of the exact boundaries between the bed of the Canadian River and adjacent property significant.

An unresolved dispute concerning the boundaries existed by the mid–1970s. In 1985, in an attempt to resolve the dispute, the Texas Legislature allocated funds and authorized the Land Office to conduct a survey for the purpose of establishing the boundaries of the Canadian River. Mauro, in his capacity as Land Commissioner, hired D.D. Shine, a licensed surveyor, to conduct a historical gradient boundary survey[1] of a section of the Canadian River downstream of the Sanford Dam. The survey was to determine the gradient boundary of the Canadian River before the construction of the Sanford Dam. In their affidavits, Mauro and Giberson assert that the decision to conduct a historical survey rather than one that would establish the current gradient boundary was based, at least in part, on an opinion of the

Texas Attorney General that said, in essence, that the construction of a dam does not alter the State's ownership of a river bed.[2] Despite failed efforts of the Land Office and the riparian landowners to agree on details of the survey, D.D. Shine conducted the historical survey for the Land Office during 1988 and 1989.

In 1989, the riparian landowners secured permission from the legislature to bring a suit against the State for declaratory judgment concerning the boundary dispute.[3] This suit was filed July 19, 1989. The landowners subsequently amended their petition to assert claims against relators Mauro and Giberson, in their individual and official capacities, and against the Land Office. The added claims alleged that actions of Mauro and Giberson intentionally resulted in a survey showing a boundary wider than would have resulted from a properly conducted gradient boundary survey. The landowners claim these actions were in violation of their constitutional property rights, as well as other protected rights. Mauro and Giberson responded by raising the affirmative defense of official immunity.

On the basis of Mauro and Giberson's defenses of official immunity, relators moved for summary judgment on each of the landowners' claims. In support of their motion for summary judgment on these claims, relators offered the affidavits of Mauro and Giberson wherein they asserted that they acted in good faith and in reliance on the published opinion of the Attorney General and other opinions of the legal staff at the Land Office.

The landowners next sought to depose Mauro and Giberson regarding the claims asserted against them, including their defense of official immunity. Relators objected to any questions concerning the claims against Mauro and Giberson or their defense of official immunity and sought a protective

---

1. A gradient boundary is a boundary established by using the survey method created for, and approved by, the United States Supreme Court in *Oklahoma v. Texas*, 260 U.S. 606, 631–32, 43 S.Ct. 221, 224–25, 67 L.Ed. 428 (1923). The definition of a gradient boundary was subsequently approved by the Texas Supreme Court in *Motl v. Boyd*, 116 Tex. 82, 286 S.W. 458, 467 (1926). The gradient boundary is described in Arthur A. Stiles and Graham B. Smedley, *The*

*Gradient Boundary–The Line Between Texas and Oklahoma Along the Red River*, 30 Tex.L.Rev. 305 (1952).

2. Op.Tex.Att'y Gen. No. M–953 (1971).

3. By Senate concurrent resolution 165, signed June 16, 1989.

order. The landowners filed a motion to compel the depositions, supporting it with a Rule 166a(g) affidavit stating that the deposition was necessary to properly resist the relators' motion for summary judgment.[4] On November 8, 1993, Judge Sims entered an order denying relators' motion for protective order, compelling the depositions of Mauro and Giberson, and postponing the court's decision on relators' motion for summary judgment. From this order, relators seek mandamus relief.

■■■ The standards to be applied in a mandamus proceeding have been clearly set out by the Texas Supreme Court in the recent decision of *Walker v. Packer*, 827 S.W.2d 833 (Tex.1992). Mandamus is an extraordinary remedy, available only in limited circumstances. *Id.* at 840; *Hill v. Lopez*, 858 S.W.2d 563, 565 (Tex.App.—Amarillo 1993, orig. proceeding). To be entitled to the remedy of mandamus a relator must meet both requirements of a two-prong test set forth in *Walker*. The relator must show that (1) the trial court clearly abused its discretion, and (2) that the relator has no adequate remedy by appeal. *Walker*, 827 S.W.2d at 839–40. This court has no power to issue a writ of mandamus in the absence of these conditions. *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985).

The clear abuse of discretion prong is approached differently with respect to factual matters than it is concerning the determination and application of the appropriate law. In this case, relators contend that Judge Sims erred in failing to apply special rules of discovery which, they claim, arise when a defendant official has made a claim of official immunity. Thus, we must determine whether Judge Sims "abused his discretion"[5] by failing to apply the law of official immunity to this discovery dispute.

■■ Relators' position is that once a public official has raised the defense of official immunity, no discovery may be had of that official until the trial court has made a threshold determination that the right or rights alleged to have been violated were clearly established at the time of the official's actions. This position is taken directly from the language of the United States Supreme Court case of *Siegert v. Gilley*, 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). In their brief, relators extensively discuss the issue of whether the actions of Mauro and Giberson violated a clearly established right.

We are called upon to determine whether this rule, clearly articulated and firmly entrenched in the federal law of immunity, has been adopted as the applicable rule in Texas. Relators unequivocally state that "Texas follows the law developed by the federal system in applying the state law of official immunity." In support of this statement, relators cite the cases of *Travis v. City of Mesquite*, 830 S.W.2d 94 (Tex.1992) and *Albright v. Dept. of Human Services*, 859 S.W.2d 575, 580 (Tex.App.—Houston [1st Dist.] 1993, no writ), and Texas Civil Practice and Remedies Code section 51.014(5).[6]

In *Travis v. City of Mesquite*, Justice Cornyn, in his concurring opinion, expressed a willingness to look to federal decisions on the issue of good faith in the absence of a well developed body of Texas decisions. He reasoned:

> Only a few cases discuss good faith in the context of a claim of official immunity to a common law cause of action. Because of the similarity between good faith as it applies to the defense of qualified immunity to section 1983 claims, these cases addressing good faith in that context are instructive.

---

4. Tex.R.Civ.P. 166a(g). The Rule states that if it appears from the affidavits of a party opposing a motion for summary judgment that the party cannot present facts essential to justify his opposition to the motion, the court may refuse the summary judgment motion or order a continuance to permit affidavits to be obtained or depositions to be taken. *Id.*

5. When used in this context, the phrase "abuse of discretion" is a misnomer because a court has no discretion in determining or applying the law. *Walker v. Packer*, 827 S.W.2d at 400. We use the phrase only for consistency with the underlying two-prong test.

6. Tex.Civ.Prac. & Rem.Code § 51.014(5) (Vernon Supp.1994).

*Id.* at 103. Relators interpret this statement to mean that "there is a great similarity between federal qualified immunity and state official immunity...."[7] While we agree that there are such similarities, we do not find that Justice Cornyn's statement on the issue of good faith shows that Texas has adopted the federal rule concerning pretrial discovery in immunity cases.

The second case relators rely upon, *Albright v. Dept. of Human Services*, concerned the liability of employees of the Texas Department of Health and Human Services for wrongful conduct during an investigation of child abuse. *Albright*, 859 S.W.2d at 577–78. The court was presented with an appeal from a grant of summary judgment in favor of the defendant employees based on three separate immunities. *Id.* at 578. In addition to a claim of common-law official immunity, the defendants relied on statutory immunities provided in sections 17.08 and 34.03 of the Texas Family Code.[8] *Id.* at 578–79. Following the lead of Justice Cornyn, the court looked to federal authority in determining the issue of good faith, the common element of each of the immunities asserted. *Id.* at 580. However, neither the trial court nor the court of appeals specified upon which immunity the summary judgment was based. Therefore, we do not agree that this decision stands for the proposition that Texas has adopted the entire, or even a substantial part of, the federal practice of qualified immunity.[9]

Section 51.014(5) of the Texas Civil Practice and Remedies Code provides for an interlocutory appeal from the denial of a motion for summary judgment based on a defense of official immunity.[10] An examination of the effect of this statute demonstrates why relators are not clearly entitled to the protection from discovery they seek. Relators contend that section 51.014(5) shows that the Texas Legislature has "adopt[ed] the federal *system.*" (emphasis added). However, Justice Larsen, in her concurring opinion in

*Gonzalez v. Avalos*, 866 S.W.2d 346 (Tex. App.—El Paso 1993, no writ), clearly explains why relators' view overstates the effect of this statute.

In discussing the effect of section 51.014(5), Justice Larsen wrote: "What the legislature has ignored, however, is that qualified immunity in federal cases ... is judged by an objective standard, amenable to summary disposition, while Texas law employs a subjective standard in defining official immunity." *Id.* Justice Larsen went on to state that the United States Supreme Court proscribed pretrial discovery of officials claiming immunity only after adopting an objective standard of good faith and thereby prescribing prediscovery methods for testing a plaintiff's claim. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985). Texas courts have not yet adopted this objective standard.

In Texas, good faith in official immunity cases has traditionally been measured by a subjective standard as demonstrated in *Campbell v. Jones*, 153 Tex. 101, 264 S.W.2d 425 (1954). In *Campbell*, a teacher sued the trustees of an independent school district, in the form of a cross-action, to establish their personal liability for a breach of contract. *Id.*, 264 S.W.2d at 426. The parties stipulated that the defendant officials acted "without any intent to deprive Cross–Plaintiff of any funds rightfully due her [and] without any corrupt motives [and] without bad faith in any respect." *Id.* at 427. The Texas Supreme Court found this stipulation regarding the officials' subjective intent to be determinative of the officials' protection from personal liability. *Id.* Therefore, based upon the stipulation, the officials were completely exonerated of personal liability. *Id.* The subjective nature of the test of good faith was recently affirmed in *Font v. Carr*, 867 S.W.2d 873 (Tex.App.—Houston [1st Dist.] 1993, no writ). In that case, the court ex-

---

**7.** Relators' petition at 35.

**8.** Tex.Fam.Code Ann §§ 17.08, 34.03 (Vernon 1986).

**9.** Qualified immunity is the term commonly used in federal courts for the concept Texas courts generally refer to as official immunity.

**10.** Tex.Civ.Prac & Rem.Code § 51.014(5) (Vernon Supp.1994).

pressly rejected the defendant official's argument that Texas courts do, or should, follow the federal law of qualified immunity. *Id.*

Justice Cornyn, in his concurring opinion in *Travis,* urged the adoption of a test of good faith with both objective and subjective elements. *Travis v. City of Mesquite,* 830 S.W.2d at 104. This test was recently applied in *City of Houston v. Newsom,* 858 S.W.2d 14, 18 (Tex.App.—Houston [14th Dist.] 1993, no writ). Although the *Newsom* court reversed the denial of summary judgment based on the parties' affidavits, it recognized the existence of a subjective element in applying the test suggested by Justice Cornyn. The existence of that subjective element militates toward the allowance of discovery before a trial court is required to rule on a defendant official's motion for summary judgment.

Relators cite, and this court has found, no Texas authority where pretrial discovery has been enjoined based on a defendant's claim of official immunity. To the contrary, several cases in which the defense of official immunity was raised reveal that pretrial discovery of the defendants had occurred. For example, in *Brown v. Herman,* 852 S.W.2d 91, 93 (Tex.App.—Austin 1993, orig. proceeding [leave denied] ), the appellate court denied leave to file a petition for writ of mandamus when the relators sought relief from an order allowing limited discovery concerning their claim of official immunity. Even in *Travis,* where Justice Cornyn felt that the defense of official immunity had been properly presented to the trial court, the opinion shows that depositions were taken of the defendant police officers. *Travis v. City of Mesquite,* 830 S.W.2d at 97.

In light of the foregoing authority, we conclude that Texas has not adopted the federal law of qualified immunity for determining state claims of official immunity. Although the available authority appears to indicate that discovery of an official claiming immunity has typically been allowed in Texas, no court has directly addressed the issue. Relators have failed to establish that the law required the trial court to enjoin the requested discovery. Because of the strong policy arguments in favor of limiting discovery of officials claiming immunity, and the increasing attention Texas courts are giving the issue, a prudent trial court might choose to look to the federal practice for guidance in ruling on these discovery issues. However, our review of the applicable authorities convinces us that the federal approach to discovery in cases involving claims of official immunity has not yet been adopted in this state. That review convinces us that the law relating to this issue is not settled but is in a state of development. Mandamus is not an appropriate proceeding for adopting new rules of law and, where the law is unsettled, mandamus will not issue. *Hill v. Lopez,* 858 S.W.2d 563, 566 (Tex.App.—Amarillo 1993, orig. proceeding).

Relators have failed to meet the first prong of the test for the issuance of a writ of mandamus by establishing a clear abuse of discretion on the part of the trial judge. That being true, we need not address whether they have an adequate remedy at law. *Id.*

We note parenthetically that the trial court's discovery order and our refusal to issue a writ of mandamus do not destroy any privilege that relators may have in law against the disclosure of confidential information or communications. Any claim of such privilege remains to be decided by the trial court.

Accordingly, for the reasons we have stated, relators' petition for writ of mandamus must be, and is, hereby denied.