Robert D. FOWLER, William C. Martin, and Charles Vick, Appellants,

v.

Mary Ann SZOSTEK and Lawrence V. Szostek, Appellees.

No. 01–94–01136–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 3, 1995.

Kelly Frels, Ronald Scott, Lisa A. Brown, Houston, for appellants.

David T. Lopez, Thomas H. Padgett, Jr., Houston, for appellees.

Before HUTSON–DUNN, O'CONNOR and WILSON, JJ.

## OPINION

WILSON, Justice.

This is an interlocutory appeal from the denial of a motion for summary judgment under TEX.CIV.PRAC. & REM.CODE ANN. § 51.014(5) (Vernon Supp.1995).[1] Robert D. Fowler, William C. Martin, and Charles Vick, the appellants and defendants in the trial court, are current or former junior high school administrators in the Cypress–Fairbanks Independent School District (CFISD). Mary Ann and Lawrence V. Szostek, the

---

1. Section 51.014(5) provides that a person may appeal from an interlocutory order of a district court that denies a motion for summary judg- ment that is based on an assertion of immunity by an individual who is an officer or employee of the state or a political subdivision of the state.

appellees and plaintiffs in the trial court, are the mother and step-father of a deceased Cypress–Fairbanks junior high student, Brandi Nelson. Brandi committed suicide at her home after being removed from school for allegedly selling marijuana. The Szosteks filed this wrongful death suit, asserting tort (negligence and bystander) claims and a due process claim under the Texas Constitution. The defendants filed a motion for summary judgment, asserting immunity under TEX.EDUC.CODE ANN. § 21.912(b) (Vernon 1987) and under the official immunity doctrine. The trial court denied the motion. This appeal resulted.[2] We reverse and render.

### Summary judgment evidence

During the 1992–93 school year, Brandi Nelson was a student at Bleyl Junior High School. Defendants Vick and Fowler are assistant principals at Bleyl. Defendant Martin was the principal of Bleyl at the time. The affidavits of the defendants set forth the following facts. On the afternoon of December 17, 1992, two days before the Christmas vacation break, Fowler questioned an eighth-grade student, Andrew, about an allegation from another student that he possessed drugs. Fowler determined that Andrew was in possession of marijuana. Andrew told Fowler he and his friend Blake purchased the marijuana from Brandi for $25. The boys gave the money to Brandi the day before, and she delivered the marijuana that day. Vick obtained a written statement from Andrew. Both Brandi and Blake were removed from class and separately interviewed.

Martin interviewed Brandi about the allegation that she had sold marijuana. She denied selling marijuana to anyone. Martin searched Brandi's backpack and did not find any drugs. The search was witnessed by Pam Stelzig, a secretary in the main office. Martin asked the school nurse to search Brandi for contraband. The nurse felt along Brandi's clothing and inside her shoes and socks. Again, Ms. Stelzig witnessed the search. The nurse did not find any contraband. Martin told Brandi that he was pleased no drugs had been found, and at the present time, the allegation against her was unsubstantiated.

In the meantime, Vick interviewed Blake, the other boy involved in the drug sale. Blake admitted that he and Andrew bought marijuana from Brandi. Both boys gave written statements to Vick. Fowler, Vick, and Martin agreed the students should be disciplined. Based on the CFISD's code of conduct, they decided the boys should be assigned to the CFISD's alternative education program and should receive substance abuse counseling. They determined that Brandi should be recommended for expulsion for the remainder of the school year for distributing drugs on campus.

On the morning of December 18, 1992, the last day of school before the holiday break, the parents of Andrew, Blake, and Brandi were asked to come to school. The boys, in the presence of their parents, separately confessed to buying the drugs and identified Brandi from a school picture. The boys received an "emergency removal," that is, they were sent home from school for the remainder of the day. An emergency removal is implemented to prevent distraction and disruption and to promote student safety.

Fowler also met with Mrs. Szostek and Brandi that morning. Fowler told Brandi and Mrs. Szostek that the administration believed that Brandi had sold marijuana to two students on campus, and he read the two boys statements to them. Fowler told Mrs. Szostek that the recommendation to expel Brandi was not a final decision and that she was entitled to a hearing before a discipline review committee, which would look at the evidence and make a decision. He explained that the committee's decision could be appealed to the school board.

At Mrs. Szostek's request and in her presence, Fowler telephoned Mr. Szostek and explained the hearing and appellate process to him. Fowler told him to schedule a hearing with Charles Goodson, the associate superintendent for administration in the school district. Fowler told Mrs. Szostek that she

---

2. The plaintiffs also sued CFISD. CFISD moved for summary judgment, and the trial court granted its motion. CFISD is not a party to this appeal.

could meet with Martin, the principal, that morning and that his secretary was preparing the emergency removal paperwork. Mrs. Szostek and Brandi left school without talking to Martin or waiting for the paperwork. Fowler noted that during this meeting, Brandi was "teary-eyed" but made no comments. Fowler was the only defendant to speak to the plaintiffs on December 18, 1992. In their affidavits, the three defendants testified that the decision to investigate the drug sale allegations and to impose discipline involved discretion and judgment and that they were acting in good faith at all times.

In his affidavit, Charles Goodson testified that expulsion is any removal from school for more than six days. When a school recommends expulsion, his office schedules the hearing and selects a discipline review committee. The committee is composed of administrators from other campuses in the district. On the morning of December 18, 1992, he received a telephone call from Mr. Szostek regarding the accusation that his stepdaughter, Brandi, sold drugs at school. Goodson explained the hearing process to him, and they agreed to hold the expulsion hearing on January 5, 1993. After the conversation, Goodson and his secretary prepared the expulsion hearing notice letter, a copy of which is attached to his affidavit. The letter was sent to the Szosteks that day by express mail for a Saturday delivery.

The school board policies, attached to the motion for summary judgment, mirror the language in section 21.3011(b) of the Education Code regarding expulsion. A student may be removed from class and expelled if the student sells marijuana on school property. TEX.EDUC.CODE ANN. § 21.3011(b) (Vernon Supp.1995). The board policies provide for the expulsion process. Specifically, a student shall be expelled by written order setting the term of the expulsion. Before expulsion, the board or its designee, *i.e.,* the discipline review committee, shall provide the student a hearing at which the student is afforded due process. The due process afforded includes prior notice of the charges and proposed sanctions; the right to a full and fair hearing before the board or its designee; the

right to an adult representative or legal counsel; the opportunity to testify and present evidence and witnesses; and the opportunity to examine the evidence presented by the school administration and question its witnesses. The notice shall be in writing and shall advise of the nature of the evidence and the names of any witnesses. The student shall be notified of the hearing date. Any decision by the board's designee to expel a student may be appealed to the board. The authority to expel a student for a single serious offense, such as the selling of marijuana, is delegated from the board to the deputy superintendent and the discipline review committee.

The CFISD Code of Conduct, a copy of which is attached to the motion for summary judgment, also provides that a student selling or distributing marijuana shall be expelled for the balance of the school year unless the offense occurs during the final six-weeks, in which case, the student may remain expelled through the following semester. The code sets forth the same procedure for notice and hearing as the board policies. The code also provides that before an expulsion can be made, the hearing must be held within seven school days of the date of the offense leading to expulsion unless an extension is mutually agreed on by the district's representative and the student's parent or guardian.

In response to the summary judgment, the Szosteks filed affidavits. Mrs. Szostek testified that on December 17, 1992, Brandi told her that she had been accused by school officials of selling drugs. She was searched and then released. Brandi was upset but denied any involvement. Brandi told her mother that the school officials told her they were satisfied that the accusation was not true. At 7:30 a.m., December 18, 1992, Fowler telephoned Mrs. Szostek to come to school to discuss Brandi. Fowler met with her and told her that Brandi was expelled for dealing drugs. She begged Fowler to wait until after the holidays to give them the chance to discuss things further. She also told him the decision would devastate Brandi.

Mrs. Szostek testified that Brandi joined Fowler and her during their meeting. Fowler told Brandi she was expelled for dealing drugs. He stated that two students had

given sworn statements in which they identified Brandi as the person who sold them drugs. Mrs. Szostek testified that Fowler refused to let her see the statements and to give her the students' full names. He did not read the statements to her. Mrs. Szostek refused to sign a release form acknowledging that Brandi was being removed on an emergency basis from the school and expelled.

In his affidavit, Mr. Szostek testified that he received a call at work from his wife on December 18, 1992. She told him that Brandi had been expelled from school for the rest of the year because, according to school officials, she had sold marijuana to two students at school. He then spoke to Fowler who told him that Brandi had been expelled for dealing drugs on campus. Fowler told him two students had given sworn statements in which they identified Brandi has the person who sold drugs to them. Fowler refused to give him the students' full names or read him the statements.[3]

After Mrs. Szostek brought Brandi home, she left to run an errand, and Brandi went to sleep in her room. Mr. Szostek came home early from work, woke up Brandi, and asked if she had sold drugs. She denied having done so. Mr. Szostek then went to the store. While both parents were gone, Brandi shot herself in the abdomen with Mr. Szostek's gun. When Mr. Szostek arrived home, he found Brandi and called 911. She was taken to Hermann Hospital where she died several hours later. The police report provided that a note was found in at the foot of Brandi's bed. The note provided, "I lied[.] I love you."

### Standard of review

■ Summary judgment is proper only when a movant establishes that no genuine issue of material fact exists, thereby entitling the movant to judgment as a matter of law. *Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 471 (Tex.1991). In reviewing the summary judgment, we must indulge every reasonable inference in favor of the nonmovant and re-

solve any doubts in its favor. *Marchal v. Webb,* 859 S.W.2d 408, 412 (Tex.App.—Houston [1st Dist.] 1993, writ denied).

■ A defendant is entitled to summary judgment if it conclusively establishes all elements of an affirmative defense as a matter of law. *Marchal,* 859 S.W.2d at 412; *Clark v. Pruett,* 820 S.W.2d 903, 905 (Tex.App.— Houston [1st Dist.] 1991, no writ). The nonmovant must then expressly present to the trial court any reasons seeking to avoid the movant's entitlement to summary judgment and must present summary judgment proof when necessary to establish a fact issue. *Albright v. Department of Human Serv.,* 859 S.W.2d 575, 578 (Tex.App.—Houston [1st Dist.] 1993, no writ).

In their brief, the plaintiffs assert that the defendants seek a review of the denial of summary judgment on the merits and not just on the issue of immunity. The defendants acknowledge that the immunity issue is the only ground for summary judgment on which they seek appellate review. We will only review the immunity issue in this interlocutory appeal. *Boozier v. Hambrick,* 846 S.W.2d 593, 596 (Tex.App.—Houston [1st Dist.] 1993, no writ).

### Immunity and negligence

In point of error one, the defendants contend the trial court erred in not granting their motion for summary judgment on the plaintiffs' tort claims because they established as a matter of law their immunity and because there are no genuine issues of material fact.

■ The defendants rely on a provision in the Texas Education Code that provides immunity for school officials from certain acts. TEX.EDUC.CODE ANN. § 21.912(b) (Vernon 1987). Section 21.912(b) provides:

No professional employee of any school district within this state shall be personally liable for any act incident to or within the scope of the duties of his position of employment, and which act involves the exercise of judgment or discretion on the part

---

**3.** In his statement to the police, Mr. Szostek stated that he called Goodson after talking to a school official. Goodson told him that he could appeal the school's decision, and they scheduled a meeting for January 5, 1993. Mr. Szostek stated that he explained this to Brandi.

of the employee, except in circumstances where professional employees use excessive force in the discipline of students or negligence resulting in bodily injury to students.[4]

Thus a professional school employee is not personally liable for acts done within the scope of employment that involve the exercise of judgment or discretion, except in a circumstance where the employee, in disciplining a student, uses excessive force or his negligence results in bodily injury to the student. *Barr v. Bernhard,* 562 S.W.2d 844, 849 (Tex.1978).

■ The exception to immunity exists only in those instances where disciplining a student is involved. *LeLeaux v. Hamshire–Fannett Sch. Dist.,* 835 S.W.2d 49, 53 n. 2 (Tex.1992). "Discipline" in the school context ordinarily describes some form of punishment. *Hopkins v. Spring Indep. Sch. Dist.,* 736 S.W.2d 617, 619 (Tex.1987). When punishment or discipline is not involved, courts have upheld a school official's immunity under section 21.912(b). *See, e.g., Hopkins,* 736 S.W.2d at 619; *Duross v. Freeman,* 831 S.W.2d 354, 356 (Tex.App.—San Antonio 1992, writ denied); *Stout v. Grand Prairie Indep. Sch. Dist.,* 733 S.W.2d 290, 292 (Tex. App.—Dallas 1987, writ ref'd n.r.e), *cert. denied,* 485 U.S. 907, 108 S.Ct. 1082, 99 L.Ed.2d 241 (1988); *Diggs v. Bales,* 667 S.W.2d 916, 918 (Tex.App.—Dallas 1984, writ ref'd n.r.e); *Wagner v. Alvarado Indep. Sch. Dist.,* 598 S.W.2d 51, 53 (Tex.Civ.App.—Waco 1980, no writ).

Here, the defendants disciplined Brandi when they decided to remove her on an emergency basis and recommend her expulsion. The plaintiffs contend the defendants were negligent in expelling Brandi from school and that their negligence was the proximate cause of her suicide; therefore, the statutory immunity does not apply. The defendants, on the other hand, contend that the discipline exception is narrowly construed and courts recognize only two types of punishment that may subject an educator to liability. They contend an educator may be liable for imposing discipline (1) when "excessive force" is used, *i.e.,* when an official physically strikes or touches a student; or (2) when no force is used on the student but some action is required on the part of the student that results in bodily injury.

■ The defendants did not use any force in disciplining Brandi. Therefore, we must determine whether "negligent discipline" is involved in this case and its scope. "Negligent discipline" is punishment involving no force, but rather requires some action on the part of the student as a result of which the student suffers bodily injury, as in ordering a student to run laps. *Hopkins,* 736 S.W.2d at 619 (citing *Diggs,* 667 S.W.2d at 918). We find that the defendants did not negligently discipline Brandi as a matter of law.

■ The defendants investigated the allegation made by one student against Brandi. The defendants decided to discipline Brandi only after the allegation that she had sold drugs was corroborated by a second student and after the two students signed sworn statements, confessed to their parents, and identified Brandi. Brandi was removed from school only after her mother met with Fowler and he explained the discipline process to both parents. Brandi was taken home by her mother. After a student has been removed from school, "it is the responsibility of the parent or guardian to provide adequate supervision" for the student during that time. TEX.EDUC.CODE ANN. § 21.301(n) (Vernon 1987). Under these facts, the defendants did not owe, as a matter of law, a legal duty to Brandi once she left the campus.

We find that the trial court erred by denying the defendants' summary judgment motion on their immunity defense under section 21.912(b).

We sustain point of error one.

### Immunity and constitutional claims

In points of error two through four, the defendants contend the trial court erred in denying summary judgment because they are

---

4. This section does not apply to the operation, use, or maintenance of any motor vehicle. TEX. EDUC.CODE ANN. § 21.912(c) (Vernon 1987).

immune from the plaintiffs' constitutional claims under the doctrine of official immunity and under the Education Code. The plaintiffs contend that the defendants, in their individual capacities, violated Brandi's due process rights under the Texas Constitution by summarily expelling her.

**Common law immunity**

■ The defendants raised the doctrine of official immunity as a ground for summary judgment against the plaintiffs' due process claim. Official immunity is an affirmative defense.[5] *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex.1994). Thus, the burden is on the defendant to establish all elements of the defense. *Id.* Government employees are entitled to official immunity from suit when they (1) act within the scope of their authority, (2) perform discretionary duties, and (3) act in good faith. *Id.* Under this doctrine, government employees involved in discretionary acts are immune from personal liability for erroneous or negligent conduct as long as they act in good faith and within the scope of their employment.[6] *Albright*, 859 S.W.2d at 579. The policy judgment reflected by the doctrine protects those employees from suit even if they act negligently. *Chambers*, 883 S.W.2d at 655.

■ Discretionary acts require deliberation, decision, and judgment, whereas ministerial acts involve obedience to orders or the performance of a duty to which the actor has no choice. *Chambers*, 883 S.W.2d at 654; *Albright*, 859 S.W.2d at 579. Investigating and acting on gathered facts has been characterized as a discretionary function. *See Albright*, 859 S.W.2d at 579. Here, the three individual defendants investigated the allegations of drug dealing, and all made decisions based on the facts they gathered. The actions of all three required deliberation, decisionmaking, and the exercise of judgment. We find that the summary judgment evidence shows that all three defendants were carrying out discretionary functions when they investigated the allegation against Brandi, decided to emergency remove her, and recommended her expulsion. Moreover, there is no evidence in the record that the defendants acted outside the scope of their employment or any assertion by the plaintiffs that they did.

■ Thus the only issue left to resolve is whether the defendants were acting in good faith with respect to their actions towards Brandi. To determine whether the defendants in this case acted in good faith, we will balance the competing interests of the respective parties and the public. *Albright*, 859 S.W.2d at 580. The test is one of objective legal reasonableness, without regard to whether the government official acted with subjective good faith. *Chambers*, 883 S.W.2d at 656 (citing *Swint v. City of Wadley*, 5 F.3d 1435, 1441–42 (11th Cir.1993), and *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991)). We must look to whether a reasonable school official could have believed his or her conduct to be lawful in light of clearly established law and the information possessed by the official at the time. *See id.* To controvert the summary judgment proof on good faith, the plaintiffs must show that no reasonable person in the defendants' position could have thought the facts were such that they justified the defendants' acts. *Id.* at 657.

■ In their affidavits, the defendants aver that they acted in good faith at all times. The defendants decided to recommend that Brandi be expelled only after the allegation against her had been corroborated. The two students who bought marijuana confessed to doing so in front of their parents, identified Brandi as the person who sold them the drugs, and signed written statements. The plaintiffs do not raise a material fact issue as to good faith in their affidavits.

The plaintiffs argue, however, that the defendants acted in bad faith because they intentionally violated Brandi's constitutional

---

5. The terms "qualified," "official," and "quasi-judicial" immunity are for all practical purposes the same. *City of Houston v. Kilburn*, 849 S.W.2d 810, 812 n. 1 (Tex.1993); *Travis v. City of Mesquite*, 830 S.W.2d 94, 100 n. 2 (Tex.1992) (Cornyn, J., concurring).

6. In their petition, the plaintiffs have sued the three defendants personally; there is no allegation that the defendants are sued in their official capacities. Moreover, the plaintiffs in their brief contend that the defendants are being sued in their individual capacities only.

rights by summarily expelling her (and not simply recommending her expulsion) on December 18, 1992, without any due process. The plaintiffs argue that the defendants' bad faith is evidenced by their attempt to modify school records. The school records referred to by the plaintiffs are copies of a worksheet that tracks a student's offenses. The worksheet shows the school's disciplinary problems with Brandi. The evidence shows that Fowler was the only defendant to write on the document with respect to the events on December 18, 1992. Therefore, if a fact issue as to bad faith is raised by these documents, the only defendant implicated is Fowler. However, we do not find a fact issue exists.

The first copy of Brandi's worksheet shows that on December 18, 1992, Fowler wrote "1 day E.R. Expulsion." Martin gave a copy of this worksheet to the plaintiffs during a meeting on January 4, 1993. Fowler later amended his notation on the worksheet to read "emergency removal/recommend expulsion." In his affidavit, Fowler testified that he changed the worksheet because the worksheets are usually cleaned up before any disciplinary proceeding, and his intent was to explain his original notation.[7]

The defendants' testimony that Brandi was only removed on an emergency basis from school and that they only *recommended* expulsion is corroborated by Fowler's letter to the plaintiffs, dated December 18, 1992. The letter, contemporaneously prepared with Brandi's removal from school, provides that the only disciplinary action taken against Brandi that day was her emergency removal from school. Moreover, the letter prepared by Goodson, the associate superintendent, states that the plaintiffs requested a hearing concerning Brandi's *proposed* expulsion for distributing drugs on campus. His letter was also prepared on December 18, 1992, after his conversation with Mr. Szostek. Finally, the board policies expressly delegate the authority to suspend or remove students to the principal and assistant principals, but do not delegate the authority to expel students to them. We find that there is no fact issue that the defendants acted in bad faith.

**Statutory immunity**

The defendants also argue that the plain language of section 21.912(b) is broad enough to bar all claims against the defendants, both tort and constitutional. The plaintiffs cite *Moore v. Port Arthur Indep. Sch. Dist.,* 751 F.Supp. 671, 673 (E.D.Tex.1990), in which the district court held that section 21.912(b) does not operate to bar due process claims arising under the United States and Texas constitutions. In *Moore,* the district court, citing *Stout,* 733 S.W.2d at 294, held that section 21.912(b) was intended to bar only tort liability. In *Stout,* the appellants challenged the constitutionality of section 21.912(b). 733 S.W.2d at 292. In discussing the purpose of the statute, the court of appeals noted that, "Protecting teachers from tort liability effects a broader purpose, that purpose resting upon the importance of public education to the entire state." *Id.* at 294. However, in *Stout,* the only claim brought against the school official was negligence; no constitutional claims were at issue in the case. Therefore, we find *Moore* to be of limited use in determining whether section 21.912(b) provides immunity from constitutional claims.

We need not reach this issue, however, because we hold that the defendants are immune from liability under the doctrine of official immunity.

We find that the trial court erred in denying summary judgment to the defendants on the plaintiffs' constitutional claims because they are immune from suit under the official immunity doctrine.

We sustain points of error two through four to the extent they address the defendants' official immunity.

**7.** The plaintiffs contend that Fowler's affidavit contradicts his deposition testimony, which they quote in a footnote in their response to the motion for summary judgment. However, the pages of Fowler's deposition quoted are not attached to the response. In the deposition testimony quoted in their response, Fowler stated that he did not remember why he prepared the other copy of the worksheet but wanted a clean copy, he thought, to send to his attorney. This testimony does not create a fact issue that Brandi was expelled by the defendants without due process or that Fowler acted in bad faith.

## Conclusion

We reverse the trial court's judgment and render judgment in favor of the defendants.