

# NUMBER 13-07-00390-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

| | |
|---|---|
| **TEXAS DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES, NOE PENA, MAYRA QUINTANILLA, AND SAMANTHA GUAJARDO, INDIVIDUALLY AND IN THEIR OFFICIAL CAPACITIES,** | **Appellants,** |

**v.**

| | |
|---|---|
| **E.R. AND J.R.,** | **Appellees.** |

On appeal from the 214th District Court of Nueces County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza and Benavides**
**Memorandum Opinion by Justice Benavides**

On July 8, 2003, based on an investigation of alleged sexual abuse and neglectful

supervision, the Texas Department of Family and Protective Services ("TDFPS") removed

J.R. and E.R.'s children from their home.[1]   After the investigation, the plaintiffs filed suit against TDFPS, and against TDFPS employees Noe Pena, Mayra Quintanilla, and Samantha Guajardo, individually and in their official capacities (collectively "defendants"). The plaintiffs sought damages and injunctive relief and alleged causes of action including negligence, gross negligence, negligence per se, fraud, intentional infliction of emotional distress, tortious interference with family relations, and violations of rights protected by the Texas Constitution.  *See* TEX. CONST. art. I, §§ 9, 19, 25.  The defendants filed a motion for summary judgment and a joint amended plea to the jurisdiction, and the trial court partially granted and partially denied both.  The defendants prosecuted this interlocutory appeal.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(5), (8) (Vernon 2008).  We affirm in part and reverse in part.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In March 2003, E.R.'s daughter made an outcry of sexual abuse against J.R. According to E.R., "on or about March 9, 2003 [she] was advised by [Mayra] Quintanilla . . . that [TDFPS] had received a complaint that [J.R.] had sexually abused [her] daughter . . . [and] that a complaint of neglectful supervision was filed against [her]."  On March 13, 2003, Quintanilla, a TDFPS caseworker, interviewed the child at the Children's Advocacy Center and confirmed the outcry.

On March 14, 2003, the defendants and the plaintiffs entered into a safety plan under which J.R. would leave the home and have no contact with the children for one

---

[1] We will refer to the E.R. and J.R. by their initials due to the allegations of abuse and in order to protect the identities of the children involved.  We will refer to E.R. and J.R. collectively as "plaintiffs."  J.R. is the children's stepfather; nevertheless, unless noted otherwise, we will refer to the children as the plaintiffs' children.

month. On April 16, 2003, the defendants informed the plaintiffs that the investigation was ongoing and verbally extended the safety plan until the investigation was completed.

On April 24, 2003, Quintanilla made a home visit, and J.R. was the only person at the residence. The children were not home. E.R. shared custody of the children with their father who had the children every other weekend and on holidays.

At some point during the investigation, the child recanted her outcry. Quintanilla noted that, even though it is common for children to do so, this does not mean the recant is true. She believed the recant was important and considered it in making her determination in the case.

From the beginning of the case, Quintanilla thought there was "reason to believe" abuse had occurred, but Pena, Quintanilla's supervisor, made the conclusion that the original finding should be "unable to determine." *See generally* 40 TEX. ADMIN. CODE § 700.511 (2004) (Texas Department of Family and Protective Services, Disposition of the Allegations of Abuse or Neglect) (listing the various dispositions that TDFPS caseworkers may make regarding the investigation). Pena stated that he based his original conclusion on the recant and on a medical report that showed redness around the child's vagina but was inconclusive regarding whether abuse had occurred.

On May 14, 2003, Quintanilla sent letters to both of the plaintiffs informing them that the report "has been investigated[,] and there was not sufficient information to determine if the abuse/neglect did occur and [they] will be providing further services." No mention of an extension of the safety plan was made in the letter.

On May 21, 2003, the plaintiffs' attorney sent a letter to Pena. The letter requested an informal administrative review of the defendants' investigation. The same letter served

as a complaint against Pena filed pursuant to section 261.309 of the family code. *See* TEX. FAM. CODE ANN. § 261.309 (Vernon 2008).

Pena thereafter changed the finding in the case from "unable to determine" to "reason to believe." He made the change after a consultation with Mary Ann Vogt, the program director. Both Quintanilla and Pena discussed with the plaintiffs the need to continue the safety plan and verbally extended the plan after the original plan expired. On June 6, 2003, J.R. was indicted on a charge of indecency with a child. *See* TEX. PENAL CODE ANN. § 21.11 (Vernon 2003).

On July 1, 2003, Pena met with the plaintiffs and their attorney. During that meeting, Pena informed them that he had changed the disposition of the investigation from "unable to determine" to "reason to believe." At that time, it was Pena's understanding that the plaintiffs knew J.R. was to continue to stay away from the children. Additionally, according to the plaintiffs, a new safety plan would be implemented.

On July 7, 2003, TDFPS received a complaint against E.R., alleging neglectful supervision of her child, based on J.R.'s return to the home.[2] On July 8, 2003, based on a decision made by Pena and Vogt, the children were removed from the home and ultimately placed in their father's custody. The plaintiffs indicated that they had not signed the new safety plan before the children were removed.

On May 26, 2004, TDFPS informed the plaintiffs, through a letter to their attorney, that the TDFPS's Administrative Review of Investigation Findings ("ARIF") was complete.

---

[2] While E.R. stated in her affidavit that she was informed about the report of neglectful supervision on or about March 9, 2003, the record contains a letter from TDFPS noting that the report was received by TDFPS on July 7, 2003.

4

The review affirmed the disposition of "reason to believe" regarding abuse by J.R. and "reason to believe" regarding neglectful supervision by E.R. The plaintiffs appealed the ARIF to the Center for Consumer Affairs, which changed the findings to "unable to determine" regarding J.R. and "ruled out" regarding E.R.

In February 2004, E.R. gave birth to a new baby. At the beginning of August 2004, the TDFPS statewide complaint intake office received another complaint involving the plaintiffs. The investigation was assigned to Guajardo, a TDFPS employee. On August 3, 2004, after attempting to reach the plaintiffs with no success, Guajardo sent a letter to the plaintiffs informing them of the investigation and her need to speak with them. On August 9, 2004, the indictment against J.R. was dismissed.

The plaintiffs sued TDFPS and Guajardo, Pena, and Quintanilla in both their official and individual capacities, seeking monetary damages and injunctive relief. The plaintiffs asserted claims for damages for fraud, interference with the plaintiffs' "family relationship and possessory rights to their minor children," negligence, gross negligence, negligence per se, intentional infliction of emotional distress, malicious prosecution, invasion of privacy, "violation of Chapter 42 of the Family Code," and conspiracy to commit fraud and unlawfully interfere with the plaintiffs' "family relationship and with the possessory right to her child." According to the plaintiffs, they received an "*ex parte* order against [TDFPS] and the defendant caseworkers enjoining them from pursuing any further investigation against [the plaintiffs] arising out of" the sexual abuse allegations.[3]

---

[3] Nowhere in the record is there any documentary evidence, complying with the rules of civil procedure, of a temporary restraining order, temporary injunction, or permanent injunction having been entered against the defendants. *See* TEX. R. CIV. P. 683, 685, 687. The only evidence in the record of the granting of injunctive relief is testimony by the plaintiffs and a discussion during the hearing on the motion for summary judgment and plea to the jurisdiction wherein the trial court stated to the plaintiffs, "I'm gonna grant

The defendants filed a motion for summary judgment and a joint amended plea to the jurisdiction. In their joint amended plea to the jurisdiction, the defendants asserted that the plaintiffs' claims against TDFPS seeking monetary damages and injunctive relief were barred by sovereign immunity and case law. The defendants also argued that the individual defendants, sued in their official capacities, were protected by sovereign immunity against the same claims for damages. The defendants, in their joint amended plea to the jurisdiction, also sought dismissal of the plaintiffs' claims for (1) intentional infliction of emotional distress and (2) "damage claims under [the] Texas Constitution." The defendants argued in their motion for summary judgment that the plaintiffs' claim for tortious interference with familial relations should be dismissed, claiming that such a cause of action is not recognized in Texas. The defendants asserted that official immunity protects the individual defendants sued in their individual capacities. Additionally, the defendants asserted that there was insufficient evidence of intentional infliction of emotional distress and no evidence justifying a permanent injunction.

The trial court partially granted the plea to the jurisdiction based on sovereign immunity, dismissing the plaintiffs' claims for monetary damages against TDFPS and the individual defendants in their official capacities. The trial court partially granted the motion for summary judgment, dismissing the plaintiffs' claims of intentional infliction of emotional distress and tortious interference with familial relations.[4] The defendants then filed this

your relief."

[4] The plaintiffs' pending claims in the trial court are: (1) claims for injunctive relief against the defendants; and (2) claims for monetary damages against the individual defendants in their individual capacities. For the sake of completeness, we will address each of the issues raised by the defendants in their brief to this Court.

6

interlocutory appeal.[5]  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(5), (8).

The defendants raise four issues on appeal claiming that: (1) the plaintiffs' claims against TDFPS and the individual defendants in their official capacities are barred by sovereign immunity; (2) the individual defendants in their individual capacities are entitled to the affirmative defense of official immunity; (3) the Texas Constitution does not permit a private right of action for violation of the right to privacy; and (4) the plaintiffs are not entitled to a permanent injunction.  Accordingly, the claims remaining before this Court are (1) the plaintiffs' claim for injunctive relief against all of the defendants, and (2) the plaintiffs' claims for monetary damages against the individual defendants in their individual capacities.

## II. JURISDICTION

Texas procedure generally forbids us to hear interlocutory appeals, favoring instead appeals from final judgments or orders.  *See Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 272 (Tex. 1992).  However, we have jurisdiction to hear interlocutory appeals from orders denying a motion for summary judgment based on a claim of immunity and a plea to the jurisdiction raised by a governmental unit.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(5), (8); *see also Tex. A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 846 (Tex. 2007); *Hidalgo County v. Gonzalez*, 128 S.W.3d 788, 791 (Tex. App.–Corpus Christi 2004, no pet.).

## III. PLEA TO THE JURISDICTION

### A. Standard of Review:  Plea to the Jurisdiction

---

[5] The plaintiffs did not appeal the trial court's decisions.

A plea to the jurisdiction seeks dismissal of a case based on a lack of subject-matter jurisdiction. *Harris County v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004). Sovereign immunity raises questions of subject-matter jurisdiction and is properly questioned in a plea to the jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225-26 (Tex. 2004). "Whether a pleader has alleged facts that affirmatively demonstrate a trial court's subject-matter jurisdiction is a question of law reviewed de novo." *Id.* at 226 (emphasis omitted).

## B.     Violation of Texas Constitutional Rights

In their third issue, defendants assert that "plaintiffs' claims under the Texas Constitution for damages should be dismissed as to all defendants in any capacity." We note that the partial granting of the plea to the jurisdiction already dismissed the claims for monetary damages against TDFPS and against the individual defendants in their official capacities. Because this is a jurisdictional issue, it may be raised in a plea to the jurisdiction. *Univ. of Tex. Sys. v. Courtney*, 946 S.W.2d 464, 468-669 (Tex. App.–Fort Worth 1997, writ denied) (holding that trial court did not have jurisdiction over plaintiff's damages claim for alleged violations of plaintiff's due process rights arising from the Texas Constitution); *see City of Elsa v. M.A.L.*, 226 S.W.3d 390, 391 (Tex. 2007) (reviewing an interlocutory appeal from a plea to the jurisdiction wherein defendant sought damages for "'deprivations of privacy and confidential rights, privileges and immunities secured by the laws and Constitution of Texas under Article I, Section 8 and 19'").

Under the Texas Supreme Court's decision in *City of Beaumont v. Bouillion* and its progeny, the plaintiffs have no private cause of action for damages for alleged violations

8

of constitutional rights by the individual defendants in their individual capacities. 896 S.W.2d 143, 147 (Tex. 1995); *see City of Elsa*, 226 S.W.3d at 392*; see also Courtney*, 946 S.W.2d at 468-69; *Democracy Coalition v. City of Austin*, 141 S.W.3d 282, 295 (Tex. App.–Austin 2004, no pet.). Therefore, the trial court does not have jurisdiction to hear this claim. *See Courtney*, 946 S.W.2d at 468-469. We agree with the defendants and conclude that the trial court erred by not dismissing the plaintiffs' claims for damages, against the individual defendants in their individual capacities, for violations of the Texas Constitution. Defendants' third issue is sustained.

## C.    Sovereign Immunity

The defendants, in their first issue, assert that, under the doctrine of sovereign immunity, the claims against TDFPS and the individual defendants in their official capacities should have been dismissed in their entirety. In the first part of their fourth issue, the defendants specifically argue that the plaintiffs cannot seek injunctive relief against TDFPS.

Sovereign immunity comprises two protections: immunity from suit and immunity from liability. *See Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999) (per curiam). The state is protected from judgment by immunity from liability, even when the legislature has waived immunity from suit. *Id.* Immunity from liability is not a jurisdictional bar. *Id.* On the other hand, immunity from suit operates as a bar to jurisdiction, absent express consent from the state. *Id.*

To establish jurisdiction in the trial court, the plaintiff suing the state under state law may establish the state's consent to suit by: "(1) alleging legislative consent to such suit

9

in his petition, either by reference to a statute or express legislative permission, and (2) pleading facts that fall within the scope of legislative consent." *Tex. Dep't of Health v. Rocha*, 102 S.W.3d 348, 353 (Tex. App.–Corpus Christi 2003, no pet.) (citing *Tex. Dep't of Criminal Justice v. Miller*, 51 S.W.3d 583, 587 (Tex. 2003)); *see Jones*, 8 S.W.3d at 555-56. Additionally, agency action may be subject to judicial review when the action violates constitutional due process or the constitution itself waives the state's immunity from suit. *Rocha*, 102 S.W.3d at 353 (citing *Martin v. Tex. Bd. of Criminal Justice*, 60 S.W.3d 226, 229 (Tex. App.–Corpus Christi 2001, no pet.)); *Sw. Airlines v. Tex. High-Speed Rail Auth.*, 867 S.W.2d 154, 157 (Tex. App.–Austin 1993, writ denied), *overruled in part on other grounds by Tex. Dep't of Protective and Regulatory Servs. v. Mega Child Care, Inc.*, 145 S.W.3d 170, 191-92 (Tex. 2004).

When a plaintiff sues a state agency, the plaintiff sues the state. *Rocha*, 102 S.W.3d at 353 (citing *Lowe v. Tex. Tech Univ.*, 540 S.W.2d 297, 298 (Tex. 1976)). State agencies enjoy the same sovereign immunity as the state. *Rocha*, 102 S.W.3d at 353. When sued in their official capacity, state employees are protected by the same sovereign immunity shielding the agency they represent. *Id.* TDFPS, as a state agency, is entitled to the sovereign immunity enjoyed by the State of Texas, and Pena, Quintanilla, and Guajardo enjoy the state's sovereign immunity also, at least for the claims brought against them in their official capacities. *See* TEX. HUM. RES. CODE ANN. §§ 40.001, 40.002 (Vernon 2001 & Supp. 2008).

As we noted previously, the partial grant of the plea to jurisdiction dismissed the plaintiffs' claims for damages against both the TDFPS and the individuals in their official

10

capacity. The only remaining claim against TDFPS and the individual defendants in their official capacity to which sovereign immunity may be raised is the claim for injunctive relief.[6] In the first part of their fourth issue, defendants allege that the plaintiffs' claims for injunctive relief against TDFPS are precluded by *Bagg v. UTMB Galveston*, among others. 726 S.W.2d 582, 585 (Tex. App.–Houston [14th Dist.] 1987, writ ref'd n.r.e.).

However, in *City of Elsa*, the Texas Supreme Court recognized that the *Bagg* decision does not support the defendants' argument that injunctive relief may not be sought against the State. *City of Elsa*, 226 S.W.3d at 392 ("In this case we reaffirm that . . . governmental entities may be sued for injunctive relief under the Texas Constitution."). In *City of Elsa*, the city argued that the trial court lacked subject-matter jurisdiction over the plaintiff's claims because they only sued the city and not the individual officers of the city who were alleged to have taken the unauthorized actions. *Id.* at 391. In rejecting the city's claim, the supreme court noted that "'suits for injunctive relief' may be maintained against governmental entities to remedy violations of the Texas Constitution." *Id.* at 392 (citing *Bouillion*, 896 S.W.2d at 149).[7] We overrule the defendant's first issue and the first part

---

[6] In their plea to the jurisdiction, the defendants specifically stated, "claims for injunctive relief against the individual [d]efendants in their official capacities are not addressed by this Plea." We do not, therefore, address injunctive relief regarding the individual defendants in their official capacities in this section of the opinion.

[7] While neither party raised it in their arguments to this Court, during the trial court's hearing on the plea to the jurisdiction and motion for summary judgment, the defendants cited our decision in *Nabejas v. Tex. Dep't of Pub. Safety*, 972 S.W.2d 875 (Tex. App.–Corpus Christi 1998, no pet.). *Nabejas* followed *Bagg* in holding that "[w]hen a party seeks to enjoin the activities of a state agency, it must sue an individual in authority at the agency and not the agency itself." *Nabejas*, 972 S.W.2d at 876. We recognize that, to the extent a party is seeking to enjoin the State from violating the party's constitutional rights, *City of Elsa* overrules our decision in *Nabejas* and cases relying on *Nabejas*. *See City of Elsa*, 226 S.W.3d at 392; *Nabejas*, 972 S.W.2d at 876; *Bagg*, 726 S.W.2d at 585; *see also Tex. Dep't of Criminal Justice-Corr. Div. v. Martinez*, No. 13-05-495-CV, 2006 Tex. App. LEXIS 117, at *2 (Tex. App.–Corpus Christi January 6, 2006, no pet.) (mem. op.); *accord City of Alamo v. Montes*, 904 S.W.2d 727 (Tex. App.–Corpus Christi 1995) (holding that "there is no basis from the text of the Constitution to assume a party is given more than equitable protection"), *vacated as moot by* 934 S.W.2d 85 (Tex. 1996).

of the defendants' fourth issue as it relates to the plaintiffs' claim for injunctive relief against TDFPS for violations of the plaintiffs' rights under the Texas Constitution.

## IV. SUMMARY JUDGMENT

### A.     Standard of Review

Summary judgments are reviewed de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). Official immunity is an affirmative defense and may be raised in a motion for summary judgment. *See Joe v. Two Thirty Nine J.V.*, 145 S.W.3d 150, 162 (Tex. 2004); *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994). We review the denial of a motion for summary judgment where official immunity is asserted under the same standards by which we review the granting of such motions. *See Welch v. Milton*, 185 S.W.3d 586, 593 (Tex. App.–Dallas 2006, no pet.).

The defendant has the burden to conclusively establish each element of official immunity. *Chambers*, 883 S.W.2d at 653. "An issue is conclusively established when the evidence is such that there is no room for ordinary minds to differ as to the conclusion to be drawn from it." *Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.*, 644 S.W.2d 443, 446 (Tex. 1982). To satisfy this burden, the defendant must demonstrate that he is entitled to judgment as a matter of law because no genuine issue of material fact exists. *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2005) (citing TEX. R. CIV. P. 166a(c)); *Welch v. Milton*, 185 S.W.3d 586, 593 (Tex. App.–Dallas 2006, pet. denied). "[I]n deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true; and . . . every reasonable inference must be indulged in favor of the non-movant and any doubts must be resolved

12

in favor of the non-movant." *Welch*, 185 S.W.3d at 593 (citing *Am. Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997)). "In deciding whether an employee's summary judgment proof conclusively establishes the official-immunity defense, we must determine whether there are disputed facts material to its elements." *Telthorster v. Tennell*, 92 S.W.2d 457, 461 (Tex. 2002).

## B.  Injunctive Relief Against the Individual Defendants

In the second part of the defendants' fourth issue, the defendants assert that there is no evidence to support plaintiffs' claims for injunctive relief against the individual defendants in their individual capacities. We conclude that we do not have jurisdiction to review this claim. *Stary v. DeBord*, 967 S.W.2d 352, 353-53 (Tex. 1998) ("Appellate courts have jurisdiction to consider immediate appeals of interlocutory orders only if a statute explicitly provides appellate jurisdiction.").

Section 51.014 of the civil practice and remedies code provides the avenue for the defendants' interlocutory appeal. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014. Because this section "'is a narrow exception to the general rule that only final judgments and orders are appealable,'" we must strictly construe it. *Montgomery County v. Fuqua*, 22 S.W.3d 662, 665 (Tex. App.–Beaumont 2000, pet. denied) (quoting *Tex. Dep't of Transp. v. City of Sunset Valley*, 8 S.W.3d 727, 730 (Tex. App.–Austin 1999, no pet.)).

Section 51.014(a)(4) provides the right to an interlocutory appeal from a district court order that "grants or refuses a *temporary* injunction . . . ." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(4) (emphasis added). This subsection does not describe the interlocutory appeal presently before us. The defendants are not appealing from the order

13

entering a temporary injunction, and the arguments presented in their brief address only a permanent injunction.

Subsection (a)(5) permits an interlocutory appeal from a district court order that "denies a motion for summary judgment that is based on an assertion of immunity by an individual who is an officer or employee of the state or a political subdivision of the state . . . ." *See id.* at 51.014(a)(5). In their brief to this Court, the individual defendants attack the injunctive relief on no evidence grounds and not on immunity grounds. *See Phillips v. Dafonte*, 187 S.W.3d 669, 675 (Tex. App.–Houston [14th Dist.] 2006, no pet.) (noting that, to entitle itself to an interlocutory appeal under section 51.014(a)(5), the party must claim immunity). Strictly construing section 51.014(a)(5), as we must, we conclude that this section does not confer jurisdiction in this Court over this part of the defendants' fourth issue. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(4); *Fuqua*, 22 S.W.3d at 665. Having concluded that we do not have jurisdiction over the second part of the defendants' fourth issue, we dismiss this portion of the defendants' appeal. *See Tex. Educ. Agency v. Donna Indep. Sch. Dist.*, 221 S.W.3d 791, 793 (Tex. App.–Corpus Christi 2007, no pet.) (dismissing appeal for lack of jurisdiction under section 51.014(a)(8)).

## C. Official Immunity

The defendants, in their second issue, assert that, under the doctrine of official immunity, the individual defendants in their individual capacities are shielded from all of the plaintiffs' claims against them.

The affirmative defense of official immunity from suit is available to state employees sued in their individual capacities so long as the employees were performing (1)

14

discretionary duties, (2) in good faith, (3) while acting in the scope of their employment. *Chambers*, 883 S.W.2d at 653 . Public policy underlies the doctrine of official immunity: "If administrative officials are held liable for their negligence, 'the prudent would be reluctant to enter governmental service and even competent persons who entered public life would not be zealous in discharging their duties.'" *Austin v. Hale*, 711 S.W.2d 64, 68 (Tex. App.–Waco 1986, no writ) (quoting *Baker v. Story*, 621 S.W.2d 639, 643-44 (Tex. App.–San Antonio 1981, writ ref'd n.r.e.)). "Immunity is particularly important in the area of investigation of child abuse, 'where the investigator is required to make a decision that, in all likelihood, is going to be viewed by someone as improvident, no matter what the decision is.'" *Allbright v. Tex. Dep't of Human Servs.*, 859 S.W.2d 575, 579 (Tex. App.–Austin 1993, no writ) (quoting *Austin*, 711 S.W.2d at 68). "When official immunity shields a governmental employee from liability, sovereign immunity shields the governmental employer from vicarious liability." *Vela v. Rocha*, 52 S.W.3d 398, 404 (Tex. App.–Corpus Christi 2001, pet. denied) (citing *Univ. of Houston v. Clark*, 38 S.W.3d 578, 580 (Tex. 2000)).

Discretionary duties are those involving personal deliberation, judgment, and decision. *Chambers*, 883 S.W.2d at 654. When a government official is discharging those duties generally assigned to him, he is acting within the scope of his employment. *Id.* at 658. Good faith, in official immunity, is measured objectively—we ask "whether a reasonably prudent official, under the same or similar circumstances, could have believed that his conduct was justified based on the information he possessed when the conduct occurred." *Ballantyne v. Champion Builders, Inc.*, 144 S.W.3d 417, 426 (Tex. 2004). Good

faith may be proven by the employee's own affidavit, *see Vela*, 52 S.W.2d at 405; *City of La Joya v. Herr*, 41 S.W.3d 755, 761 (Tex. App.–Corpus Christi 2001, no pet.); however, the testimony must be "clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and [capable of being] readily controverted." Tex. R. Civ. P. 166a(c). Statements merely concluding that a reasonable employee could have taken the same action are insufficient to prove good faith. *Vela*, 52 S.W.2d at 405. If no reasonable person could have decided as the employee did, the employee has acted in bad faith. *Id.* at 404; *see Chambers*, 883 S.W.2d at 657 (holding that the non-movant has the burden to show that no reasonable officer could have believed that the facts justified the officer's actions).

A governmental employee must conclusively establish each of these elements before he can be granted summary judgment based on official immunity. *Gonzalez*, 128 S.W3d at 793 (citing *Clark*, 38 S.W.3d at 580). To determine if the employee has met his burden and is worthy of summary judgment, we must evaluate whether there are disputed, material facts to each element. *Id.* (citing *Telthorster*, 92 S.W.2d at 461).

### 1. Samantha Guajardo

Guajardo's affidavit accompanied the defendants' motion for summary judgment. In her affidavit, Guajardo noted that "on or around the beginning of August 2004," she "was assigned to investigate a report that had been made to the statewide intake office. . . ." Guajardo affirmed that she was required to "initiate an investigation when [she] received the reported intake." The only relevant investigative act included in the record and taken by Guajardo after the report arrived was to mail a letter to the plaintiffs informing them that

16

she was "assigned to an investigation involving your family."

Discretionary acts include investigating and acting on gathered facts. *Fowler v. Szostek*, 905 S.W.2d 336, 342 (Tex. App.–Houston [1st Dist.] 1995, no writ); *see Albright*, 859 S.W.2d at 579 (citing *Eakle v. Tex. Dep't of Human Servs.*, 815 S.W.2d 869, 875-76 (Tex. App.–Austin 1991, writ denied)). "[P]ublic officials act within the scope of their authority if they are discharging the duties generally assigned to them." *Ballantyne*, 144 S.W.3d at 424.

The plaintiffs claim that Guajardo's actions were not discretionary because she did not "present any summary judgment evidence that she had any discretion to commence an investigation against [J.R.] because she presented absolutely no allegations of abuse and/or discretion against plaintiffs [J.R.] or [E.R.]" In fact, in her affidavit, after asserting that she was neither aware of nor involved in the other investigation, Guajardo stated, "I was assigned to investigate a report that had been made to the statewide intake office located in Austin, Texas. This report involved the [plaintiffs]." In the next paragraph in her affidavit, Guajardo noted, "I was not responsible for the report being generated. I was required to initiate an investigation when I received the reported intake." Pursuant to her duties as a TDFPS case officer, Guajardo attempted to contact the plaintiffs for interviews upon receipt of the intake report. Other than the letter, Guajardo had "no contact with the [plaintiffs] whatsoever."

Based on this summary judgment evidence, we conclude that, upon receiving a report through the statewide intake office, Guajardo's attempting to contact the child's parents to schedule an interview was a discretionary act, taken in good faith, within the scope of her employment.

17

The plaintiffs present no summary judgment evidence to controvert Guajardo's summary judgment proof. They merely assert that Guajardo had no discretion to take the actions she took. However, we have already determined that Guajardo had the requisite discretion. The plaintiffs did not present evidence raising a fact issue regarding Guajardo's official immunity.

Because Guajardo was engaged in discretionary acts, in good faith, that were within the scope of her employment, we hold that summary judgment should have been entered in Guajardo's favor. We sustain defendants' second issue as it pertains to Guajardo.

### 2. Mayra Quintanilla

Quintanilla's testimony indicated that her duties as a TDFPS caseworker include investigating and making determinations of reports of sexual abuse. Under established case law, such duties are discretionary because they require personal deliberation, decision-making, and judgment regarding how to run the investigation. *See Albright*, 859 S.W.2d at 579; *Koerselman v. Rhynard*, 875 S.W.2d 347, 351 (Tex. App.–Corpus Christi 1994, no pet.); *Alamo Workforce Dev., Inc. v. Vann*, 21 S.W.3d 428, 434 (Tex. App.–San Antonio 2000, no pet.).[8]

Quintanilla's affidavit demonstrates that she was "discharging the duties generally assigned to her." *Chambers*, 883 S.W.2d at 658. Additionally, on this element of official immunity, the plaintiffs do not assert that Quintanilla was doing anything beyond what was generally assigned to her; they allege that her actions were wrongful. "The fact that a specific act that forms the basis of the suit may have been wrongly or negligently

---

[8] The plaintiffs do not challenge this element of Quintanilla's official immunity defense.

18

performed does not take it outside of the scope of authority." *Koerselman*, 875 S.W.2d at 350; *see Chambers*, 883 S.W.2d at 658 n.9 (citing *Anderson v. Creighton*, 483 U.S. 635, 644 (1987) and rejecting the argument that "an officer necessarily operates outside the scope of the officer's authority when acting unlawfully.").

The plaintiffs challenge Quintanilla's removing the children from the plaintiffs' home. We must determine whether the defendants' summary judgment evidence demonstrates that a reasonable caseworker could have believed the facts at the time of removal justified removing the child from the plaintiffs' home. *See Ballantyne*, 144 S.W.3d at 426.

At the time of the removal, the facts known to Quintanilla were as follows: (1) the original disposition of "unable to determine" had been changed to "reason to believe" by Pena and Pena's supervisor; (2) in spite of her understanding that the plaintiffs had agreed to extend the safety period whereby J.R. would not be in the house at the same time the children were, he was in the house at the same time, resulting in a complaint of neglectful supervision being raised against E.R.; (3) the outcry had been made and then recanted; (4) a medical report that was inconclusive as to what caused the redness around the child's vagina; (5) the grand jury had returned an indictment against J.R. arising from the same allegations of abuse; (6) a discussion occurred between Pena and the plaintiffs several days before removal from which Pena understood that the safety plan would remain in place; and (7) a removal decision was made by Pena and Vogt, the program director. According to Quintanilla, a reasonable officer could have believed, under such circumstances, that removal of the child from the home was justified.

We now investigate whether the plaintiffs raised a fact issue regarding Quintanilla's good faith. We agree with the defendants that this case is similar to *Albright*. *See Albright*,

19

859 S.W.2d at 575.  In that case, Albright sued three Texas Department of Human Services ("TDHS") employees who asserted official immunity as their defense.  *Id.* at 580. The employees removed a child from the Albright home "based on the [child initially testing positive] for gonorrhea, on the child's indication that [she may have been abused], and on Albright's denial of the diagnosis [of gonorrhea] and possibility of sexual abuse."  *Id.* Albright denied the original diagnosis before the results of the second gonorrhea test were available.  *Id.* at 577.  The child was placed in foster care and ultimately in the possession of her maternal grandmother.  *Id.*  During the time she was in foster care and with her grandmother, the child continually denied that she was abused.  *Id.*  Five months after the removal, the child was returned to Albright, and Albright sued TDHS and the employees alleging negligence, among other causes of action.  *Id.* at 578.

The trial court granted summary judgment for the employees based on official immunity.  *Id.* at 578.  The First District Court of Appeals upheld the trial court, finding that the employees were performing discretionary duties because they were investigating and acting upon facts, there was no evidence the employees were acting outside the scope of their employment, and the employees acted in good faith.  *See id.* at 580-81.  The court found good faith existed based on (1) an assertion of good faith in the summary-judgment-supporting affidavits and (2) the evidence supporting the reasons why the child was removed.  *See id.*

Significantly, the evidence presented to controvert a finding of good faith in *Albright* included similar allegations to the one present in this case:  an assertion that the employees cannot act in good faith when removing a child based on an inconclusive

20

medical report that the employees knew was inconclusive at the time they removed the child, and an assertion by the plaintiffs that the child had not been abused. *Id*. at 581. The evidence presented in *Albright* to demonstrate that the child had not been abused consisted of the deposition testimony of the examining physician who noted that she could not determine whether abuse had occurred from examining the child. *Id.* at 581. The court of appeals held that this testimony did not prove that there was no abuse; it showed only that the doctor could not determine whether abuse had occurred. *Id.* The court then held that this evidence was not probative and thus did not raise a fact issue regarding the good faith of the employees. *Id.*

Similarly, in the present case, the medical report did not conclusively prove that there was no abuse, only that the compiler of the report could not determine what caused the redness in the child's vagina. Like the *Albright* court, we believe that such evidence does not raise a fact issue regarding whether Quintanilla acted in good faith. While the report was available at the time of the removal, the report did not conclusively demonstrate that no abuse had occurred; thus, it does not call into question Quintanilla's good faith. *See id*.

However, the plaintiffs presented additional evidence, including a letter sent from Quintanilla to the plaintiffs prior to removal.[9] The letter, in pertinent part, stated, "This is to inform you that the report made on your family has been investigated and there was not sufficient information to determine if the abuse/neglect did occur and we will be providing further services." The plaintiffs assert that, by failing to state that the safety plan continued

---

[9] There were two letters, one sent to J.R. and one to E.R. Except for the addressee, the letters were identical; thus, we will refer to both as one letter.

21

beyond the original time period, the letter indicates a subjective belief on Quintanilla's part that the safety plan was not extended. The plaintiffs argue that the letter buttresses their argument that the investigation had ended without the extension of the safety plan. Additionally, the plaintiffs allege Quintanilla's failure to follow the family code's provisions for removing a child without a court order evidences a lack of good faith. *See* TEX. FAM. CODE ANN. § 262.104 (Vernon 2008) (listing the conditions which must be met for TDFPS to take possession of a child without a court order). We believe that the plaintiffs' evidence raises at least a fact issue regarding Quintanilla's good faith. *See generally Telthorster*, 92 S.W.3d at 465. Therefore, we overrule the defendants' second issue as to Quintanilla's official immunity affirmative defense.

### 3. Noe Pena

To support their argument that Pena acted within the scope of his employment, the defendants included Pena's and Quintanilla's deposition testimony. That testimony reveals that Pena changed the original finding in consultation with Vogt, the program director. Additionally, Pena asserted that "the supervisor has the discretion in changing any disposition in any case." That Pena changed the original finding after consulting with the program director is not evidence that he was acting within the scope of his employment. Moreover, Pena's mere assertion that he had the authority to change the disposition is not competent summary judgment evidence. *See Hamilton v. Wilson*, 249 S.W.3d 425, 427 (Tex. 2008) (per curiam) ("We have held that conclusory statements . . . are not sufficient to support or defeat summary judgment."). Because the defendants failed to produce summary judgment evidence to support Pena's assertion of the affirmative defense of

22

official immunity, they did not met their summary judgment burden. *See Chambers*, 883 S.W.2d at 653. We overrule the defendants' second issue as to Pena's official immunity affirmative defense.

## V. CONCLUSION

We reverse the partial denial of the plea to the jurisdiction on the plaintiffs' claims for damages, against the individual defendants in their individual capacities, for violations of rights arising under the Texas Constitution and render judgment dismissing these claims. We affirm the partial denial of the plea to the jurisdiction regarding injunctive relief sought by the plaintiffs' against TDFPS for violations of rights arising under the Texas Constitution. We reverse the partial denial of the plea to the jurisdiction on the plaintiffs' claims for injunctive relief asserted against TDFPS on grounds other than Texas constitutional violations and render judgment dismissing these claims.

Further, we dismiss, for lack of jurisdiction, the defendants' appeal regarding injunctive relief sought against the individual defendants in their individual capacities. We reverse the trial court's denial of official immunity as to Guajardo and render judgment dismissing the suit as to Guajardo. We affirm the trial court's denial of Pena's and Quintanilla's motions for summary judgment asserting the affirmative defense of official immunity.

_____
GINA M. BENAVIDES,
Justice

Memorandum Opinion delivered and
filed this the 19th day of February, 2009.